**RINGERS' DUTCHOCS, INC.,**
Plaintiff-Appellant,

v.

**S.S. S.L. 180, her engines, boilers, etc.,
and Sea-Land Service, Inc.,**
Defendants,

and

**Helvetia Swiss Fire Insurance Company,
Limited, Defendant-Appellee.**

**No. 567, Docket 73–2217.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 27, 1964.

Decided March 8, 1974.

Andrew R. Colmant, New York City
(Leo P. Cappelletti, Hill, Rivkins, Mc-
Gowan & Carey, New York City, of
counsel), for plaintiff-appellant.

Joseph Fennelly, Jr., New York City
(David L. Maloof, Donovan, Donovan,
Maloof & Walsh, New York City, of

Before KAUFMAN, Chief Judge, and FEINBERG and MULLIGAN, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

Although many find hot chocolate a delightful treat, appellant Ringers' Dutchocs had rather the opposite reaction when 2,405 cartons of chocolate arrived in New York in an overheated condition. Ringers' had ordered the chocolates from a German shipper, Gebruder Stollwerck AG, terms C.I.F. from Cologne, Germany to a public warehouse in New York. Stollwerck, in turn, had purchased an "All Risk" policy of marine insurance from appellee Helvetia Swiss Fire Insurance which, at Stollwerck's request, was issued to "the bearer." The policy was delivered to Stollwerck by Helvetia in Cologne; Stollwerck paid the premium on the policy and then mailed it to Ringers' in New York.

The chocolates arrived in New York harbor on board the S.S. "S.L. 180" on September 3, 1971. They were then transported to West Side Warehouses, Inc., arriving September 10. Upon discovering their damaged condition, Ringers' immediately notified Helvetia's designated claims survey agent in New York, Bertschmann & Maloy. Bertschmann, in turn, requested Worman & Co., Inc., surveyors, to examine the shipment. A copy of their report was sent to Ringers', which subsequently lodged a claim in the amount of $41,569.39 with Helvetia at its home office in Switzerland. Helvetia promptly rejected the claim, and Ringers' brought suit against Helvetia as well as the vessel, S.S. "S.L. 180," and its owner, Sea-Land Service, Inc.

On December 28, 1972, Helvetia moved to dismiss the complaint on the ground that it was not amenable to service of process in New York, and had committed no act which would support substituted service of process upon the Superintendent of Insurance as agent for Helvetia pursuant to N.Y. Insurance Law § 59–a. Judge Brieant agreed and dismissed the complaint as to Helvetia in an unreported opinion.

Ringers' relies on § 59–a, subd. 2(a)(1) which authorizes substituted service upon a foreign insurer where there is "issuance or delivery of contracts of insurance to residents of this state [New York] or to corporations authorized to do business therein" by the foreign insurer. Judge Brieant correctly determined that this subsection did not apply, since the policy in this instance was neither "issued" nor "delivered" to Ringers' by Helvetia. Moreover, we are of the view that although the insured "bearer" proved to be a corporation authorized to do business in New York, that fact nevertheless was not sufficient to confer jurisdiction pursuant to § 59–a, subd. 2(a)(1) because it was by no means certain, nor even likely, that the insured purchaser of the goods shipped to a New York warehouse would in fact be a corporation authorized to do business in New York. Thus, Helvetia's conduct did not comport with the conceptual underpinnings of long-arm jurisdiction—an implied consent to the constructive agency through the voluntary and, therefore, knowing act of insuring a corporation authorized to do business in New York. Cf. McLaughlin, Practice Commentary to CPLR 302 (basic long-arm statute), McKinney's Consol.Laws of N. Y., c. 8 (1972) at 63.

Nor can Ringers' find comfort in the broader, though not limitless, language of § 59–a, subd. 2(a)(4) which confers jurisdiction over the foreign insurer if he conducts "any other transaction of business" in New York. Although there is a dearth of case law interpreting this phrase in the context of § 59–a, there is analogous precedent interpreting the comparable phrase "transacts any business within the state" under CPLR 302(a)(1). In Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966), the Court of Appeals decided that the "mere shipment" of goods into New York was not sufficient "purposeful activity," Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y. 2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.

2d 68, cert denied, Estwing Mfg. Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L. Ed.2d 158 (1965), by the foreign shipper to subject him to § 302(a)'s extraterritorial reach. Similarly, we believe that the insurance of goods "merely shipped" into the State would not subject the foreign insurer to New York's jurisdiction.

Our decision in Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205 (2d Cir. 1970), strongly urged upon us by appellant, is not to the contrary. In *Aquascutum*, we carefully distinguished between two types of foreign freight forwarders: those, like carriers, who were responsible for the physical delivery of the goods into New York; and those, like shippers, who were not. We found only the former to be engaged in "the transaction of business within the state" required for long-arm jurisdiction. It is, quite simply, the physical nexus held determinative in *Aquascutum* which is absent here to link Helvetia to New York for jurisdictional purposes under § 59–a, subd. 2(a)(4).

■ Ringers' contention that Helvetia's appointment of Bertschmann & Maloy as its New York claims agent constitutes the necessary "purposeful activity" to sustain long-arm jurisdiction lacks merit as well. Until quite recently, it was well-settled that, under New York law, a "true agency" relationship between the foreign defendant and the New York "agent" was required to establish the requisite connection with New York. Glassman v. Hyder, 23 N. Y.2d 354, 362, 296 N.Y.S.2d 783, 789, 244 N.E.2d 259 (1968); McLaughlin, *supra* at 66–67. Dean McLaughlin does suggest, however, that the following cryptic footnote in Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 19– 20 n. 2, 308 N.Y.S.2d 337, 341–42 n. 2, 256 N.E.2d 506, 509 (1970) might augur change:

The present case differs materially from others, relied upon by the defendant, in which we have denied jurisdiction. . . . It is sufficient to point out that in each of those cases, all of which involved agents who were suing their principals, the plaintiff was relying on his own activities within the State, and not those of the defendant, as the basis of jurisdiction. In other words, in no one of these cases had the defendant himself engaged in purposeful activity within the State *nor had the cause of action arisen out of transactions with third parties conducted through an agent.* (emphasis added)

And, in his Supplementary Practice Commentary, McKinney's Cons.Laws of N.Y. Cumulative Pocket Suppl. for 1973–1974, pp. 9–10, Dean McLaughlin, on the basis primarily of a decision by Justice Gellinoff in Legros v. Irving, N. Y.L.J. (May 22, 1973), p. 18, col. 4 [1] (jurisdiction sustained over foreign defendant, Elmyr de Hory, in libel action based on book written by de Hory's "agent," Clifford Irving, published in New York) concludes that where a third party's complaint against a foreign principal arises out of the acts of his "agent" in New York, those acts will suffice for the jurisdictional requirement of "purposeful activity," without regard to whether the representative is an agent or an independent contractor. Yet, even if Dean McLaughlin's expansive view of New York's jurisdictional reach has merit, it would not extend to Helvetia in light of the facts presented in this case. The Certificate of Insurance explicitly states that Bertschmann & Maloy were authorized to survey and report the amount of damages *only*, not to pay or reject claims. Indeed, after receiving the survey report, Ringers' filed its claim with Helvetia in Switzerland, and Helvetia in turn rejected the claim from its home office in Switzerland. Accordingly, since the alleged breach of contract which precipitated this action emanated exclusively from Helvetia in Switzerland, and Bertschmann & Maloy appear

1. Not otherwise reported.

to be the archetypal independent contractor, its designation alone would not constitute the "purposeful activity" by Helvetia necessary for long-arm jurisdiction.

One final note: Judge Brieant refers in his opinion to a "forum clause" in the Certificate of Insurance which restricts jurisdiction over any disputes arising out of the insurance contract to Germany (where the policy was issued) or Switzerland (the location of Helvetia's home office). Helvetia urges us, in the alternative, to affirm the dismissal on the ground that such clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances," The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). We do not reach the question of the clause's applicability, however, for we agree with Judge Brieant that dismissal is required under Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over Helvetia.    Affirmed.