**DERO ENTERPRISES, INC., Plaintiff,**

**v.**

**GEORGIA GIRL FASHIONS, INC., Defendant.**

**No. 84 Civ. 7757 (PKL).**

United States District Court, S.D. New York.

Dec. 4, 1984.

Edwin Sivin, Ganz, Hollinger & Towe, New York City, for plaintiff.

Donald Nussbaum, Surowitz & Nussbaum, New York City, for defendant.

## MEMORANDUM & ORDER

LEISURE, District Judge:

This is an action for goods sold and delivered. The defendant, Georgia Girl Fashions, Inc. ("Georgia Girl") has moved for an order pursuant to Rule 12(b)(2) F.R.Civ.P. to dismiss this action on the ground this Court lacks personal jurisdiction over the defendant.

The plaintiff, Dero Enterprises, Inc. ("Dero") alleges jurisdiction on the ground of diversity of citizenship and the requisite amount in controversy. By order dated March 9, 1984, Judge Gerard Goettel denied, with leave to renew at a more appropriate time, the defendant's motion to dismiss the action for lack of personal jurisdiction. Thereafter, the parties conducted discovery and took the depositions of William Byrd, Georgia Girl's president ("Byrd deposition") and Edward Aguirre, Dero's sales representative and supervisor of inventory control ("Aguirre deposition"). The parties have submitted affidavits with regard to the motion. Dero has also submitted copies of the two depositions described above.

In response to Georgia Girl's motion, Dero contends that the Court has jurisdiction according to New York Civil Practice

Law and Rules ("CPLR") § 302(a)(1), which gives New York courts jurisdiction over a non-domiciliary "who in person or through an agent ... transacts any business within the state," as to any cause of action arising from such transaction. Dero argues that Georgia Girl transacted business in New York through its agent O.P.'s Only Fashions, Inc. ("O.P.'s Only"), or that Georgia Girl transacted business "in person" within New York. Dero also argues that Georgia Girl is "doing business" in New York for the purposes of CPLR § 301.

The following facts are presented by the affidavits and depositions. Dero, a New York corporation whose principal place of business is in New York County, is a wholesaler of women's garments. Georgia Girl, a Georgia corporation whose principal place of business is in Norcross, Georgia, is a retailer of women's apparel. Its business is confined to Georgia and it has no offices, officers, employees or designated agents in New York, and neither advertises nor solicits customers in New York. O.P.'s Only is a New York corporation whose principal place of business is located in New York County. O.P.'s Only is an independent off-price fashion buying service, which means it acts as an intermediary or broker in the women's garment industry, representing many different companies on a commission basis.

Georgia Girl has engaged the services of O.P.'s Only on several occasions to locate in the New York City market women's garments in which Georgia Girl has expressed an interest in buying. After locating the desired type of goods, O.P.'s Only would notify Georgia Girl and Byrd would visit New York. If the goods were satisfactory, he would make a purchase. O.P.'s Only usually received commissions of 5% as a result of such a transaction. Byrd has been to New York a total of 70–80 times on corporate business.

In late May or early June, 1983 Dero had on hand in two New York City warehouses approximately 25,000 to 30,000 wool lined skirts manufactured in South America. Dero obtained the names of several off-price buying services from a directory of women's fashion buyers and in that manner contacted O.P.'s Only to tell them Dero had skirts it wanted to sell. Dero customarily contacts such buying services when it has a quantity of goods to sell. This was the first time that Dero did business with O.P.'s Only. O.P.'s Only represented themselves as able to place orders for other companies on goods Dero had in stock. No one told Dero that O.P.'s Only was Georgia Girl's New York buying office, although the listing for O.P.'s Only in the women's fashion buying guide indicated it is a "Paid Resident Buying Office." O.P.'s Only had approximately 30 accounts.

After representatives of O.P.'s Only viewed the goods, O.P.'s Only called at least 20 retailers to inquire if they were interested in the skirts. On or before June 10, 1983 Byrd received an unsolicited telephone call from Bernard Pachter of O.P.'s Only asking if Georgia Girl would be interested in buying the skirts. Byrd told Pachter that he would come to New York in a few weeks to look at the goods, but Pachter replied that if he did not act quickly the line of skirts would be completely sold. Later that same day Byrd called Pachter and without having seen the goods placed an order. After receiving 18 orders, O.P.'s Only recorded them on its form and delivered the orders to Dero on June 10, 1983 or thereabouts. Two more orders were filled within a few days.

Dero made two shipments to Georgia Girl, one on June 20, 1983 and the other on June 27, 1983. Within one week of the first shipment Georgia Girl called Dero and reported that some of the skirts were defective. These skirts were returned and Georgia Girl received a credit. Later, Dero contacted Georgia Girl requesting payment, which Dero considered overdue. By letter dated August 25, 1983 Byrd notified Dero that from 25% to 50% of the skirts were defective and requested to return the entire lot. By letter dated September 2, 1983 Byrd notified Dero that the skirts were "not as purchased by our agent, O.P.'s Only."

## DISCUSSION OF LAW

In an action based on diversity of citizenship, the law of the state in which the action is begun determines whether the federal court has personal jurisdiction. *Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir.1963). In New York CPLR §§ 301 and 302 set forth the bases upon which New York courts may assert personal jurisdiction over a non-domiciliary corporation.

### A. Georgia Girl Is Not "Doing Business" In New York.

Under CPLR § 301, a New York court may assert personal jurisdiction over a foreign corporation which is doing business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917); *Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951, 953 (2d Cir.1967). This means the foreign corporation is carrying on systematic and regular activities within New York. *Id.* at 953. The only evidence of Georgia Girl's activities in New York consists of the 70 to 80 buying trips to New York taken by its president. There is no indication of the period of time during which these trips were taken, but in any event such activity does not amount to carrying on systematic and regular activities within the state. Indeed, the Supreme Court recently stated in *Helicopteros Nacionales de Colombia, S.S. v. Hall*, — U.S. ——, 104 S.Ct. 1868, 1874, 80 L.Ed.2d 404, 413 (1984) that "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction". *See Rosenberg Bros. & Co. v. Curtis-Brown Co.*, 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923); *Greenberg v. Lamson Bros.*, 273 A.D. 57, 75 N.Y.S.2d 233 (1st Dep't 1947). *See also Meyer v. Gas Magazines, Inc.*, 49 A.D.2d 864, 374 N.Y.S.2d 322 (1st Dep't 1975); *Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons*, 495 F.Supp. 253 (S.D.N.Y.1980). Based upon the foregoing, the Court holds that Georgia Girl was not doing business for the purposes of CPLR § 301.

### B. Georgia Girl Did Not Transact Business In New York In Person.

Section 302 of the CPLR subjects non-domiciliary corporations to the jurisdiction of the New York courts if they transact business in New York in person or through an agent, as to any cause of action arising from such transaction. The fact the non-domiciliary was never physically present in New York in connection with the contract sued upon is not controlling. So long as the defendant's contacts with New York have been purposeful and designed to permit it to conduct activities within New York, the court will have personal jurisdiction. *See Ehrlich-Bober & Co. v. University of Houston*, 49 N.Y.2d 574, 427 N.Y.S.2d 604, 404 N.E.2d 726 (1980); *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970); *L.F. Rothschild, Unterberg, Towbin v. Thompson*, 78 A.D.2d 795, 433 N.Y.S.2d 6 (1st Dep't 1980); *China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 454 F.Supp. 198 (S.D.N.Y. 1978). The placing of an order by a telephone call to New York is insufficient to constitute the transaction of business within New York. *M. Katz & Son Billiard Products v. G. Correale & Sons*, 20 N.Y.2d 903, 285 N.Y.S.2d 871, 232 N.E.2d 864 (1967); *L.F. Rothschild, Unterberg, Towbin v. McTamney*, 89 A.D.2d 540, 452 N.Y.S.2d 630 (1st Dep't 1982), *aff'd*, 59 N.Y.2d 651, 463 N.Y.S.2d 197, 449 N.E.2d 1275 (1983); *General Instrument Corp. v. TIE Manufacturing, Inc.*, 517 F.Supp. 1231, 1232 (S.D.N.Y.1981); *Total Sound, Inc. v. Universal Record Distributing Corp.*, 286 F.Supp. 123, 124–25 (S.D.N.Y.1968).

Georgia Girl's activities in connection with the contract at issue consisted of placing an order by means of a telephone call, returning certain of the unsatisfactory goods, placing several other telephone calls and sending letters to Dero. These actions do not rise to the level of purposeful activity in New York that is required to confer

personal jurisdiction under § 302(a)(1). *Mayes v. Leipziger,* 674 F.2d 178, 184–85 (2d Cir.1982). In connection with the subject contract, Georgia Girl did not physically enter New York, it did not initiate contact with the actors who were in New York and it was solicited by O.P.'s Only after Dero requested O.P.'s Only to find buyers for Dero's goods. These circumstances do not, in our opinion, justify the exercise of jurisdiction over a Georgia defendant that did not physically enter New York. *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967); *Katz & Son Billiard Products, supra; Total Sound, Inc., supra; Mayes v. Leipziger, supra.*

**C. Georgia Girl Did Not Transact Business In New York Through An Agent.**

Dero argues that O.P.'s Only acted as an agent for Georgia Girl in this transaction. It bases this position on Georgia Girl's use of O.P.'s Only on previous occasions, O.P.'s Only's representation that it was Georgia Girl's New York buying office, the designation in the buying guide that O.P.'s Only was a "Paid Resident Buying Office," and a specific reference to O.P.'s Only as Georgia Girl's agent in Byrd's September 2, 1983 letter.

■ The term "through an agent" as used in § 302(a)(1) has not yet been definitively interpreted by New York's highest court. *See Mayes v. Leipziger,* 674 F.2d at 180–83. After surveying the leading state and federal cases that have considered this issue, Joseph M. McLaughlin, now District Judge, synthesized the following rule:

> when the action is between a third party who dealt with a representative of the non-domiciliary in this state, the activities of that representative will be imputed to the non-domiciliary when he requested the performance of those acts in New York and those acts benefit him, and this is true without regard to whether the representative is an agent or an independent contractor.

McLaughlin, Practice Commentaries on § 302, C302:3, 7B N.Y.C.P.L.R. at 46 (McKinney Supp.1983–84). *See Mayes v. Leipziger,* 674 F.2d at 181–82; *East New York Savings Bank v. Republic Realty Mortgage Corp.,* 61 A.D.2d 1001, 402 N.Y. S.2d 639, 641 (2d Dep't 1978); *Orient Mid-East Lines, Inc. v. Albert E. Bowen, Inc.,* 297 F.Supp. 1149, 1152 (S.D.N.Y.1969). In addition, the acts performed by the representative must be sufficient to constitute "purposeful activity" undertaken with the knowledge and consent of the non-domiciliary. *See Ringers' Dutchocs, Inc. v. S.S. S.L. 180,* 494 F.2d 678, 680–81 (2d Cir.1974); *Louis Marx & Co. v. Fuji Seiko Co.,* 453 F.Supp. 385, 390 (S.D.N.Y.1978).

■ Dero argues that Georgia Girl's action led to an agency by estoppel in that O.P.'s Only represented itself as defendant's New York buying office, the goods were purchased by O.P.'s Only for the defendant, and Byrd described O.P.'s Only as Georgia Girl's agent in the September 2, 1983 letter. *Cullen v. BMW of North America, Inc.,* 490 F.Supp. 249, 253 (E.D. N.Y.1980), *rev'd on other grounds,* 691 F.2d 1097 (2d Cir.1982). "An essential element of such an estoppel is a finding that the person sought to be charged intentionally or carelessly caused the plaintiff to believe in the authority of the purported agent...." *Karavos Compania Naviera S.A. v. Atlantica Export Corp.,* 588 F.2d 1, 11 (2d Cir.1978). In addition the reliance must be reasonable. *Id.* There is no evidence that Georgia Girl intentionally or carelessly caused a belief that O.P.'s Only had authority to act for it. According to the Aguirre deposition, O.P.'s Only did not state that it was Georgia Girl's New York buying office, the invoices used indicate that the goods were sold directly to Georgia Girl and not to O.P.'s Only, and the September 2, 1983 letter was sent almost two months after the transaction took place. Dero cannot reasonably claim that it relied upon such a subsequent representation when it concededly had previously asked O.P.'s Only to find buyers for its skirts. Besides, under New York law, what the parties call O.P.'s Only "matters little—the formal trappings of agency are

not as important as the realities of the situation." *Louis Marx & Co.,* 453 F.Supp. at 390.

 The determination of the issue whether O.P.'s Only was Georgia Girl's agent turns on which party requested the services of O.P.'s Only and for whose substantive benefit or business purpose the transaction was conducted. The evidence presented by the depositions indicates that Dero requested O.P.'s Only to find buyers for its skirts. Dero obviously benefited economically from the sales that resulted from the efforts of O.P.'s Only. However, even assuming *arguendo* that O.P.'s Only was Georgia Girl's agent, its actions as Georgia Girl's "eyes" in the New York City marketplace do not rise to the level of meaningful or purposeful activity required for the assertion of jurisdiction under New York's long-arm statute. *See Ringers' Dutchocs, Inc.,* 494 F.2d at 680–81; *cf. Galgay v. Bulletin Co.,* 504 F.2d 1062, 1065 (2d Cir.1974). This is especially true considering that O.P.'s Only had no authority to complete orders for Georgia Girl. For example, the court in *Ringers' Dutchocs* held that the appointment of a New York claims agent by a non-domiciliary insurer to "survey and report the amount of damages *only,* not to pay or reject claims" did not constitute "purposeful activity." 494 F.2d at 680–81 (emphasis in original).

The Court is not unmindful of the rule that on a motion to dismiss for lack of personal jurisdiction, the pleadings and affidavits are to be construed in the light most favorable to plaintiff. On a pretrial motion to dismiss, plaintiff need only make a *prima facie* showing of jurisdiction through affidavits and supporting materials. *Mayes v. Leipziger,* 674 F.2d at 182 n. 3; *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 58 (2d Cir. 1981). After reviewing the documents submitted in opposition to the motion, the Court concludes that plaintiff has failed to make a *prima facie* showing of jurisdiction. Dero's contention that O.P.'s Only

represented itself as Georgia Girl's buying office is not supported by the responses in the Aguirre deposition to questions addressing that subject. The September 2, 1983 letter describing O.P.'s Only as Georgia Girl's agent was written seven weeks after the date of the transaction. Finally, the Byrd and Aguirre depositions are consistent about the fact that Dero approached O.P.'s Only to arrange the sale of its skirts, not the converse.

Based upon the foregoing, Georgia Girl's motion to dismiss the complaint for lack of personal jurisdiction is hereby granted.

SO ORDERED.