**NORMA WALTERS & CO., INC., Plaintiff,**

v.

**The CLOTHES GARDEN, INC., Defendant.**

**No. 88 CIV. 0626 (PKL).**

United States District Court, S.D. New York.

Sept. 7, 1988.

Kelley Drye & Warren, New York City (Patricia O. Kahn, of counsel), for plaintiff.

demonstrate that he relied on these statements in determining when to file his complaint.

LaBrum & Doak, New York City (John B. Cartafalsa, John F. Ledwith, Stephen J. Springer, of counsel), Marks & Associates, Philadelphia, Pa. (Louis N. Marks, of counsel), for defendant.

## OPINION & ORDER

LEISURE, District Judge:

Plaintiff Norma Walters & Co., Inc. ("Norma Walters") is a clothing designer and manufacturer, and is in the business of selling its goods at wholesale to retail stores. Norma Walters is a New Jersey corporation with its principal place of business in New York. Defendant The Clothes Garden, Inc. ("Clothes Garden") is a Pennsylvania corporation with its place of business located in Wynnewood, Pennsylvania. Defendant is in the business of retailing women's garments such as those manufactured by Norma Walters. Plaintiff instituted this diversity action against defendant for breach of contract, claiming that certain goods were sold and delivered to defendant, but that defendant has not paid any part of the sum due and owing.

Defendant has moved for the dismissal of the action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or, in the alternative, for transfer of the case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. section 1404(a). For the reasons stated below, both motions are denied.

## BACKGROUND

At various times between March and September of 1987, defendant placed orders with Norma Walters for garments, and defendant claims those garments were defective and/or unsalable. Defendant placed orders for this merchandise by telephone, sometimes making as many as fifteen calls a week from its store. Affidavit of Marilyn Cooper, sworn to on March 14, 1988 (hereinafter "Cooper Aff."), ¶ 12.

These garments had been selected earlier, on two occasions, by Marilyn Cooper, President of Clothes Garden, at the Norma Walters showroom in New York. On both visits, Cooper was in the showroom for three hours or less. Cooper Aff. ¶ 13. Placing orders by telephone for garments originally selected by defendant at plaintiff's showroom in New York is a customary practice between the parties.

A dispute arose between Norma Walters and Clothes Garden concerning a large number of these garments which defendant claims are defective and/or unsalable. Defendant claims that, contrary to the wholesaler's usual policy, Norma Walters refused to accept return of the defective merchandise. When no payment was made, plaintiff commenced this action.

Defendant has moved for dismissal of the action on the basis that New York courts cannot exercise personal jurisdiction over defendant consistent with due process guarantees and the confines of New York law, or in the alternative, to transfer the action to a more convenient forum.

## DISCUSSION

*Personal Jurisdiction.*

██ It is well settled that a federal court sitting in diversity jurisdiction must apply the jurisdictional statute of the state in which it sits. *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir.1963).[1]

Plaintiff concedes that jurisdiction over defendant cannot be sustained under CPLR section 301, "doing business" in New York, but instead asserts jurisdiction under section 302, New York's long-arm statute, which provides in relevant part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal

---

1. On a motion to dismiss for lack of personal jurisdiction, the Court has considerable leeway in determining how to proceed. In a case such as this, when the Court " 'chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need only make a prima facie showing of jurisdiction through its own affidavits and supporting materials.' " *Welinsky v. Resort of World D.N.V.,* 839 F.2d 928, 930 (2d Cir.1988) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981)).

jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1.   transacts any business within the state or contracts anywhere to supply goods or services in the state;

N.Y.Civ.Prac.L. § 302 (McKinney 1972 & 1988 Pocket Part).   Accordingly, the Court must now determine whether defendant's activities in New York amount to a "transaction of business" from which the instant cause of action has arisen.

The seminal case interpreting this section of the statute, is *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), in which the New York Court of Appeals, after reviewing defendant's numerous New York activities, declined to determine the sufficiency of any one, and instead held that in combination they more than met the statutory standards.   The court emphasized, however, that the holding was *not* meant to indicate that a single transaction in New York out of which a cause of action arose would not be sufficient to satisfy the statutory transaction of business requirement.   15 N.Y.2d at 458, 261 N.Y.S.2d at 19, 209 N.E.2d at 76.

In *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), the New York Court of Appeals again held that a single transaction in New York, so long as the cause of action arose from that transaction, could satisfy the statutory requirement.   More importantly, however, the court stated that the situation where a defendant was physically present in New York at the time the contract was made was "the clearest sort of case in which our courts would have 302 jurisdiction."   26 N.Y.2d at 17, 308 N.Y.S.2d at 340, 256 N.E.2d at 508.

The New York Court of Appeals has consistently held thereafter that a single contact with New York can serve as a basis for section 302(a)(1) jurisdiction.   In *George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977), defendant, a Massachusetts resident, responded to an advertisement in a Boston newspaper placed by plaintiff, a New York resident.   Defendant entered New York in order to establish an employment relationship with plaintiff, and worked solely in New England.   Their relationship continued for four years until plaintiff brought an action for breach of contract.   Plaintiff contended that jurisdiction properly existed in New York based on defendant's visit there, because the employment contract which was then negotiated and formed, was the transaction out of which the cause of action arose.   The Court upheld jurisdiction based upon that single contact, and stated:

> [a]dditionally we note that by such holding we have not overstepped constitutional bounds, for the acts upon which we rely, *the defendant's coming into New York purposefully seeking employment, his interview and his entering into an agreement with a New York employer which contemplated and resulted in a continuing relationship between them,* certainly are of the nature and quality to be deemed sufficient to render him liable to suit here.

41 N.Y.2d at 654, 394 N.Y.S.2d at 847, 363 N.E.2d at 554 (emphasis added).

The scope of section 302(a)(1) does, however, have its limits.   In *McKee Electric Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), the New York Court of Appeals held that jurisdiction could not be asserted over a defendant that had executed a contract with a plaintiff in New York, and that had, through an agent, subsequently visited plaintiff at plaintiff's place of business in New York.   A closely divided court acknowledged defendant's New York contacts, but characterized them as "infinitesimal."   20 N.Y.2d at 382, 283 N.Y.S.2d at 37, 229 N.E.2d at 607.   The contract that the parties had executed in New York had expired six or seven years prior to defendant's visit, and had been superseded by renewal agreements executed out-of-state.   Furthermore, the actual purpose of the visit was to help alleviate friction between plaintiff and plaintiff's customers, and was not closely related to the contract.   The court expressed valid concern that, were

the visit to serve as a sufficient basis for jurisdiction, then "every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York [would run] the risk of being subjected to the personal jurisdiction of our courts." 20 N.Y.2d at 382, 283 N.Y.S.2d at 37, 229 N.E.2d at 607.

■ The instant case, like *Reiner*, is distinguishable from *McKee*. [2] On two occasions, the president of defendant corporation, on her own initiative, entered New York in order to establish a business relationship with a New York resident that continued for several years. During the visits to New York, a preliminary contract was formed between the parties (which thereafter was fleshed out and renewed in telephone calls from Pennsylvania to New York), and was the contract that was allegedly breached. These activities amount to sufficiently "purposeful acts in relation to the contract," and not merely "casual visits." Therefore, although the one-day visit into New York of defendant's representative in *McKee* and the New York visit of defendant in the present action were equally brief, the Court finds that the nature and quality of these visits clearly set them apart, permitting the latter to serve as the basis for jurisdiction, while the former do not.

This determination is supported by two previous decisions of this Court, *Dero Enterprises, Inc. v. Georgia Girl Fashions, Inc.*, 598 F.Supp. 318 (S.D.N.Y.1984) and *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040 (S.D.N.Y. 1987).

In *Georgia Girl*, defendant, a Georgia retailer, placed an order with plaintiff, a New York wholesaler of women's garments, for certain garments that defendant found out about from an independent broker in plaintiff's employ. Defendant claimed that a portion of the merchandise was defective and returned that merchandise to plaintiff. Plaintiff demanded payment for the returned goods but defendant refused to pay. Throughout their business relationship and subsequent dispute, the parties had communicated solely by telephone or through the mails. This Court held that "[t]hese actions [did] not rise to the level of purposeful activity in New York that is required to confer personal jurisdiction under § 302(a)(1)." 598 F.Supp. at 321–22 (citation omitted). However, the opinion then went on to say:

> [i]n connection with the subject contract, *[defendant] did not physically enter New York, it did not initiate contact with the actors who were in New York* and it was solicited by [the broker] after [plaintiff] requested [the broker] to find buyers for plaintiff's goods. *These circumstances do not, in our opinion, justify the exercise of jurisdiction over a Georgia defendant that did not physically enter New York.*

*Id.* (citations omitted) (emphasis added). It is thus clear from the passage quoted above that defendant's absence from New York during the formation of the contract was one of the major reasons why jurisdiction was found lacking by this Court.

This conclusion is supported by the decision in *Rolls–Royce*, in which this Court stated:

> [w]hile physical presence is not a "talisman which will convert all affairs of business into a New York transaction," it is one of the most concrete manifestations of a non-domiciliary's purposeful activity in New York. N.Y.Civ.Prac.L. & R. § 302(a)(1) practice commentaries C302:9–10 (McKinney 1972). Contrary to defendant's suggestion, the fact that the meeting could have taken place elsewhere, ... is jurisdictionally irrelevant. What is relevant is that [defendant], already in New York on a business trip, agreed to participate, and did participate, in three meetings concerning [defend-

---

**2.** In ascertaining whether section 302(a)(1) jurisdiction exists, the current inquiry has essentially become whether the facts of the case before the court are more similar to *Reiner* or to *McKee*. *See, e.g., American Contract Designers,*

*Inc. v. Cliffside, Inc.*, 458 F.Supp. 735, 739 (S.D.N.Y.1978); *Pneuma–Flo Systems, Inc. v. Universal Machinery Corp.*, 454 F.Supp. 858, 866 (S.D.N.Y.1978).

ant's] contractual relationship with plaintiff.

657 F.Supp. at 1051 (citations omitted).

The Court does not dispute defendant's repeated contention that the placing of orders by telephone or through the mails from out-of-state into New York does not meet the definition of "transacting business within the state" required by the statute. Defendant's Memorandum of Law in Support of Motion to Dismiss (hereinafter "Defendant's Memo") at 15–17. Indeed, this Court in *Georgia Girl*, as defendant's papers point out, has explicitly held accordingly. 598 F.Supp. at 321. However, the Court is not concerned with these activities, since plaintiff seeks to predicate jurisdiction on defendant's visits to New York. While defendant attempts to minimize the significance of these visits,[3] the purchase orders that were executed between them, as merchants, clearly constituted valid contracts when they were accepted. UCC § 2–206.[4] Furthermore, the Court recognizes that in the context of the fashion industry, a business relationship, such as the one between the parties, does not generally exist without a buyer's *in person* initiative.

The Court therefore concludes that section 302(a)(1) permits the exercise of jurisdiction over defendant in this case and now turns to the question of whether this conclusion is consistent with due process principles.

In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court wrote that "[d]ue process requires only that in order to subject a defendant to a judgment in personam, ... he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In

*McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court found that the exercise of jurisdiction by a California court did not offend principles of due process where there was but a single contact upon which jurisdiction was founded. The Court based its decision on a qualitative analysis of the contact with the forum state. In *Hanson v. Denckla*, 357 U.S. 235, 251–52, 78 S.Ct. 1228, 1238–39, 2 L.Ed.2d 1283 (1958), the Supreme Court referred to that qualitative aspect of the contact in *McGee*, and reaffirmed that the minimum contacts requirement had been satisfied there.

■ More recently, the Supreme Court has established, in *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), that even where a defendant has *numerous* contacts with the forum state, that state cannot constitutionally exercise jurisdiction over the defendant if there is no nexus between the defendant's contact with the state and the litigation. In the present action, defendant cites this line of cases in support of the contention that New York courts lack jurisdiction over defendant. However, these cases are inapposite, as this Court has found that the cause of action here clearly arises out of defendant's contacts with New York. The Court therefore concludes that the exercise of jurisdiction comports with the mandates of due process.

*Venue.*

■ Defendant has also moved for the transfer of the case to the Eastern District of Pennsylvania. Defendant, however, has failed to persuade the Court that a transfer is warranted. Nothing in the moving papers indicates to the Court that, on balance, the inconvenience to the parties and witnesses would be significantly less, or the interests of justice significantly advanced,

---

**3.** Defendant states: "The purpose of these visits was only to place orders for goods. There was no contract negotiation or contract execution associated with these purchases." Defendant's Memo at 17.

**4.** The Court notes that it is possible to construe all subsequent dealings between the parties as renewals and modifications of the initial contracts executed during defendant's visit to New York.

if this case were to be heard in Pennsylvania, rather than in New York. Plaintiff's choice of forum is to be respected when a transfer would merely shift inconvenience from one party to the other. *Stinnes Interoil, Inc. v. Apex Oil Co.*, 604 F.Supp. 978, 983 (S.D.N.Y.1985); *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y.1983). Accordingly, the Court exercises its discretion under 28 U.S.C. § 1404(a) and denies defendant's motion to transfer.

## CONCLUSION

Based on the foregoing analysis, in spite of defendant's astute presentation of its position, defendant's visits to New York do meet the statutory requirements for personal jurisdiction. Furthermore, the exercise of jurisdiction by this Court does not offend the principles of due process. Defendant has also failed to present to the Court any compelling reasons to grant its motion to transfer this case. Therefore, it is hereby ordered that both motions be denied.

Counsel for the parties are hereby ordered to appear for a pre-trial conference in Courtroom 36 on October 14, 1988 at 3:00 p.m.

SO ORDERED