EHRLICH-BOBER & Co., INC., Appellant, v UNIVERSITY OF HOUSTON, Respondent.

First Department, July 10, 1979

**APPEARANCES OF COUNSEL**

*John S. Martin, Jr.,* of counsel *(Martin L. Perschetz* with him on the briefs; *Martin Obermaier & Morvillo,* attorneys), for appellant.

*Daniel A. Pollack* of counsel *(Martin I. Kaminsky, Neil D. Thompson* and *Stephen W. Berger* with him on the briefs; *Pollack & Kaminsky,* attorneys), and *James F. Parker* of counsel *(John L. Hill, Attorney-General of Texas),* for respondent.

## OPINION OF THE COURT

LANE, J.

We agree with the underlying facts as stated in the dissent. We also concur in the conclusion that dismissal on the basis of the doctrine of *forum non conveniens* would not obtain in this case. However, we find that dismissal of the complaint was appropriate by applying the doctrine of sovereign immunity.

In the State of New York, the doctrine of sovereign immunity is applicable to a New York State University, since the university is deemed an integral part of the government of the State *(State Univ. of N. Y. v Patterson,* 42 AD2d 328, 329; *State Univ. of N. Y. v Syracuse Univ.,* 285 App Div 59, 61). Texas law similarly provides that its State educational institutions are an arm of Texas State government (see, e.g., *Lowe v Texas Tech Univ.,* 540 SW2d 297, 298, [Tex]). Furthermore, the statute provides that a suit against the University of Houston may only be brought in Texas (Texas Education Code, § 111.33). Since the State of Texas has consented to be subject to suit, but solely in the State of Texas, we, as a matter of comity, recognize that limitation and decline to permit suit here in New York.

A recent decision of the Supreme Court of the United States does not mandate a contrary conclusion. In *Nevada v Hall* (440 US 410), the respondents, California residents, were injured in an automobile collision on a California highway. The driver of the other vehicle was an employee of the University of Nevada driving a car owned by the State of Nevada. The California Supreme Court held that the State of Nevada was amenable to suit in California and remanded the action for trial.

Prior to trial, the State of Nevada moved to limit the amount of damages by applying the Nevada statute limiting damages against the State of Nevada in a tort action to $25,000. The limitation was not applied, and the jury found in favor of the California plaintiff and awarded damages in the amount of $1,150,000. The California Court of Appeal affirmed, and the California Supreme Court denied review. The Supreme Court of the United States granted a writ of certiorari and, in reviewing the merits, affirmed the judgment of the California Court of Appeal. The court majority held, *inter alia,* that the constitutional limitations on the suability of the States involved limits on Federal courts entertaining suits against a State, but did not limit the exercise by a State of its

power to authorize its courts to assert jurisdiction over another State *(Nevada v Hall,* 440 US 410, *supra).* The court also found that the full faith and credit clause of the Constitution did not bar California from effectuating its own overriding State interest above that of Nevada, a sister State *(Nevada v Hall,* 440 US 410, *supra).* However, the court concluded by stating: "In the past, this Court has presumed that the States intended to adopt policies of broad comity towards one another. But this presumption reflected an understanding of state policy, rather than a constitutional command" *(Nevada v Hall,* 440 US 410, 425, *supra).*

In would appear that the State of New York should give great weight to the limitations imposed by sister States on suits which the sister States would permit against themselves. Absent an overriding New York State concern, the sister State's limitations on incursions against its sovereignty should be given the greatest respect.

Accordingly, the order and judgment (two papers) of the Supreme Court, New York County (HELMAN, J.), entered July 26, 1978 and July 31, 1978, respectively, dismissing the complaint, should be affirmed, without costs or disbursements.

KUPFERMAN, J. P. (dissenting). I would reverse insofar as appealed from and deny the motion to dismiss the complaint.

Plaintiff is a dealer in municipal and government securities with its office in New York City. The defendant university is a Texas institution. The university entered into a large number of transactions with the plaintiff for the purchase or sale of government securities. Most of the transactions came through a financial analyst employed by the university who, it seems, is now incarcerated in Texas.

Specifically involved are certain securities held by the university and transmitted to the plaintiff in New York for sale with a commitment by the university to repurchase them in the future for the original purchase price plus interest. This arrangement is known as a reverse repurchase agreement, and they were, in effect, loan transactions. The plaintiff in this manner purchased securities having a value of over $4,000,000, with an agreement by the university to repurchase them on July 18, 1977 plus interest of 5.05%. The university mailed a letter agreement to the plaintiff, which the plaintiff executed, and the Manufacturers Hanover Trust Company of

this city accepted receipt of payment for the securities and delivered the securities to the plaintiff. Agreements were entered into extending the dates for repurchase.

On December 6, 1977, at which time the university was, according to the plaintiff, in default on certain obligations, the university was to repurchase the securities and to make payments due. When it refused, the plaintiff sold the securities and claims to have suffered a loss of over $400,000. Inexplicably, the university now claims that it was not aware of the transactions and never consented to them. It moves to dismiss on the ground of sovereign immunity, lack of personal jurisdiction, and *forum non conveniens.*

There clearly was jurisdiction here. The university dealt with this New York broker on a continuing basis, sent its agreements here and its securities here. This is not an inconvenient forum. The only ground for a real dispute is whether the university, being under the Texas Education Code, an agency of the State of Texas, has sovereign immunity. It would seem that the law of New York would here apply where the arrangements were entered into. The doctrine of sovereign immunity is one which we recognize. (See *State Univ. of N. Y. v Syracuse Univ.,* 285 App Div 59, 61-62.) However, there is an exception to the doctrine for nongovernmental action. *(Alfred Dunhill of London v Cuba,* 425 US 682, 695.) We are not being informed as to what the purpose was of the reverse repurchase agreements, and we cannot say that they were in furtherance of a proper university function incidental to a public purpose.

The effect of the majority determination would be to give *notice* to all concerned that you deal with a Texas instrumentality at your peril.

I am reinforced in my determination by the opinion of the United States Supreme Court in *Nevada v Hall* (440 US 410) issued after the argument of this case.

BIRNS, SANDLER and SILVERMAN, JJ., concur with LANE, J.; KUPFERMAN, J. P., dissents in an opinion.

Order and judgment, Supreme Court, New York County, entered on July 26, 1978 and July 31, 1978, respectively, affirmed, without costs and without disbursements.