**Raisa R. MAYES, Plaintiff-Appellant,**

v.

**David A. LEIPZIGER and Levy, Leipziger and Normington, a Professional Law Corporation, Defendants-Appellees.**

**No. 488, Docket 81–7688.**

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1981.

Decided March 17, 1982.

Eleanor J. Piel, New York City (Sidney S. Bobbe, New York City, on the brief), for plaintiff-appellant.

Richard G. McGahren, New York City (Monte E. Sokol, D'Amato & Lynch, New York City, on the brief), for defendants-appellees.

Before TIMBERS and KEARSE, Circuit Judges, and METZNER,* District Judge.

KEARSE, Circuit Judge:

Plaintiff Raisa R. Mayes appeals from a final judgment of the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge*, dismissing her legal malpractice suit for lack of personal jurisdiction over the defendants, David A. Leipziger and Levy, Leipziger and Normington ("Levy, Leipziger"). The appeal raises the question whether New York's long-arm jurisdiction statute, New York Civil Practice Law and Rules ("CPLR") § 302(a)(1), subjects to the jurisdiction of the New York courts a California attorney and his California law firm who never entered New York but who undertook in letters and telephone calls from California to New York the representation of a New York resident in litigation in California. We agree with the district court that the defendants did not "transact business" in New York within the meaning of CPLR § 302(a)(1), and we affirm the judgment of the district court.

## I. FACTS

In 1976, Mayes, a New York resident, brought an action in federal court in California ("California action") against two Cal-

---

* The Honorable Charles M. Metzner, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

ifornia corporations and two California residents. She was then represented in the litigation by one Gustave L. Goldstein, a California attorney. The trial of the California action ended in 1979 with directed verdicts in favor of three of the defendants and a small jury verdict against the fourth. Mayes was dissatisfied with this result and decided to replace trial counsel with other California counsel. Goldstein "solicited" Leipziger to represent Mayes in the further proceedings—a motion for a new trial, *inter alia*—that were contemplated (Leipziger Affidavit dated April 23, 1981, ¶ 13.) Leipziger, a California attorney, was then a member of the firm of Levy, Leipziger, which was also located in California. Thereafter Leipziger conversed by long-distance telephone with Sidney Bobbe, Raisa Mayes's New York attorney, on October 18, 1979. In a letter of the same date, Leipziger wrote Bobbe confirming the understanding reached by telephone that Levy, Leipziger would be substituted as local counsel for Mayes in the California action and would review and argue a motion for a new trial which was to be prepared by Bobbe. The letter stated in addition that "if the motion for a new trial is unsuccessful and you determine to prosecute an appeal, we reserve the right to decide whether we wish to continue representation in connection with the appeal." Bobbe responded in a letter dated October 25, 1979, stating that the terms of Leipziger's October 18 letter were agreeable except as to Levy, Leipziger's reservation of the right not to handle the appeal, but stating that that reservation would be acceptable if Levy, Leipziger "would . . . be willing to give us the reciprocal right to engage other counsel or to act ourselves." In a letter to Leipziger dated October 19, 1979, Bobbe had spelled out all of the financial terms of Mayes's representation: "You will be entitled to receive for your fee 20% of whatever may be recovered [in excess of the amount of the 1979 verdict]. Gus and I will receive each [*sic*] 15% of any recovery. All expenses will be met by us."

During Leipziger's representation of Mayes, Leipziger and Bobbe corresponded several times on matters related to the handling of the case: Bobbe sent Leipziger drafts of motion papers Bobbe had prepared; Leipziger mailed to Bobbe copies of the revised motion papers submitted to the court; Leipziger wrote Bobbe requesting authority to order a portion of the trial transcript and asking for instructions with respect to a check from the California defendant against whom the verdict had been obtained, tendered in satisfaction of the judgment in the California action; Bobbe wrote back authorizing the purchase of the transcript and instructing Leipziger to return the check.

Eventually, on January 7, 1980, the motions for a new trial, *inter alia*, were argued and were denied from the bench, and Leipziger so informed Bobbe by telephone. Leipziger evidently agreed during the same telephone conversation to handle the case on appeal. On the following day Bobbe wrote Leipziger, stating the minimum amount Mayes would be willing to accept in settlement and forwarding the filing fees necessary to institute the appeal. Written orders embodying the California district court's oral denial of the motions apparently were to be entered on or about February 29, 1980, which Leipziger reported to Bobbe on February 29; Leipziger promised to prepare a notice of appeal the following week.

During the next several weeks Bobbe repeatedly wrote Leipziger asking whether the notice of appeal had been filed. Notwithstanding his inquiries, Bobbe heard no more from Leipziger on the subject of the appeal for nearly three months. Leipziger finally wrote Bobbe on May 15 informing him that the notice of appeal had not been timely filed. Leipziger also stated that his motion to permit a late filing *nunc pro tunc* had been denied.

Mayes subsequently brought the present action in New York Supreme Court against Leipziger and his firm seeking $500,000 in damages for legal malpractice on account of their failure to file a timely notice of appeal in the California action. Defendants removed the action to federal court pursuant to 28 U.S.C. § 1441(a) (1976), alleging that

the court had jurisdiction of the subject matter of the action on the basis of diversity of citizenship. Following removal, defendants moved, pursuant to Fed.R.Civ.P. 12(b)(2) for dismissal of the action for lack of personal jurisdiction over them.[1]

In response to the defendants' motion, Mayes contended that the court had jurisdiction pursuant to New York CPLR § 302(a)(1) which gives the New York courts jurisdiction over a nondomiciliary "who in person or through an agent . . . transacts any business within the state," as to any cause of action arising from such transaction. Mayes claimed that Bobbe had acted as the defendants' agent in connection with defendants' representation of Mayes in the California action, and that defendants had therefore transacted business in New York, within the meaning of § 302(a)(1), through Bobbe.

In a memorandum order dated August 31, 1981, the district court granted defendants' motion to dismiss, ruling that Bobbe plainly had acted only as the agent of Mayes and that the defendants therefore had not transacted business in New York through an agent within the meaning of § 302(a):

> It is patent that plaintiff's counsel functioned as agent for plaintiff throughout the continuing course of defendants' relationship with plaintiff. He retained defendants on behalf of plaintiff; he supervised, or attempted to supervise, their work product on behalf of plaintiff; now he is attempting to sue them on behalf of plaintiff. He was never agent of defendants, and jurisdiction over defendants cannot be predicated upon his activities.

This appeal followed.

## II. DISCUSSION

CPLR § 302(a)(1) provides as follows:
(a) Acts which are the basis of jurisdiction. As to a cause of action arising from

any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; . . . .

On appeal Mayes argues that § 302(a)(1) gives the court jurisdiction because the defendants transacted business in New York in person as well as through an agent. We find neither contention meritorious.

### A. The Contention that Bobbe Was Defendants' Agent

In the district court Mayes appears to have argued solely that § 302(a)(1) applied because Bobbe was the agent of the defendants. Like the district court, we find this contention to be totally lacking in factual merit.

The term "through an agent" as used in § 302(a)(1) has not yet been definitively interpreted by New York's highest court. Two of the leading cases, *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), and *Glassman v. Hyder*, 23 N.Y.2d 354, 296 N.Y. S.2d 783, 244 N.E.2d 259 (1968), when read together, may suggest that § 302(a)(1) envisions application of the traditional common-law concept of agency. In *Parke-Bernet Galleries*, the defendant Franklyn had arranged with the plaintiff art auctioneer ("Parke-Bernet") to establish a telephone link between himself in California and Parke-Bernet's New York auction room for a particular auction. A Parke-Bernet employee—one Nash—was assigned to assist Franklyn, and during the auction Nash relayed to Franklyn the bids being made in the auction room, and in turn relayed Franklyn's bids to the auctioneer. Upon receiving Franklyn's bids the auctioneer

---

1. Levy, Leipziger also moved for dismissal of the action against it under Fed.R.Civ.P. 12(b)(5) on the ground that Mayes had failed to effect proper service of process on it. In addition, both defendants asked the court, in the event that the action was not dismissed for lack of

jurisdiction, to transfer the action, pursuant to its power under 28 U.S.C. § 1404(a) (1976), to the Central District of California as a more convenient venue. The district court found it unnecessary to reach these contentions and we likewise need not reach them.

would announce them to the other bidders. Franklyn was successful in outbidding the others on two paintings; but later he refused to pay for these paintings. Parke-Bernet brought suit in New York, predicating jurisdiction on § 302(a)(1). The New York Court of Appeals ruled that Franklyn had transacted business within New York within the meaning of § 302(a)(1) both directly (*see* part B below) and through Nash as his agent. The court went to some lengths to invoke traditional agency notions, observing that " '[a] servant in the general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower'." 26 N.Y.2d at 19, 308 N.Y.S.2d at 341, 256 N.E.2d at 509 (quoting *Hartell v. T. H. Simonson & Son*, 218 N.Y. 345, 349, 113 N.E. 255, 256 (1956)). Thus the court concluded that Nash's activities during the auction were in reality done as an agent of Franklyn. In *Glassman v. Hyder, supra,* the New York Court of Appeals construed New York City Civil Court Act § 404(a)(1) which, in all respects pertinent here, contains the same language as CPLR § 302(a)(1) and gives the Civil Court jurisdiction of a nondomiciliary of the City of New York who "transacts any business" within the City "in person or through an agent." At issue was whether communications between a New York broker, representing a potential purchaser of property, and the nondomiciliary owners of non-New York real estate constituted the transaction of business by the nondomiciliaries in New York City. In upholding the lower court's dismissal for lack of jurisdiction, the court of appeals observed that in order to determine whether the owners' actions constituted the transaction of business in New York, the court should consider both the owners' correspondence with the broker and the owners' direct negotiations with the prospective purchaser; but the court also noted that "[t]he acts of the independent broker within New York should not, however, be attributed to the owners so as to become acts of the owners in New York...." 23 N.Y.2d at 362, 296 N.Y.S.2d at 789, 244 N.E.2d at 263 (citation omitted).[2] The obvious effort of the *Parke-Bernet Galleries* court to base its alternative holding on traditional concepts of agency and the caveat of the *Glassman* court against attribution to nondomiciliaries of the acts of independent contractors initially led one commentator to infer that a true agency relationship must be found in order to establish jurisdiction on the basis of transactions "through an agent" under CPLR § 302(a)(1). *See* McLaughlin, Practice Commentaries on § 302, C302:3, at 67 (McKinney 1972).

On the other hand, federal district courts sitting in New York and lower New York state courts have looked to the "realities" of the situation and have construed § 302(a)(1)'s use of the word "agent" to include any person who, with the consent of the nondomiciliary and under some measure of his control, acts in New York for the benefit of the nondomiciliary. *See, e.g., PPS, Inc. v. Jewelry Sales Representatives, Inc.,* 392 F.Supp. 375, 380 (S.D.N.Y.1975); *Arcata Graphics Corp. v. Murrays Jewelers & Distributors, Inc.,* 384 F.Supp. 469, 472 (W.D.N.Y.1974); *East New York Savings Bank v. Republic Realty Mortgage Corp.,* 61 A.D.2d 1001, 1002, 402 N.Y.S.2d 639, 641 (2d Dep't 1978); *Legros v. Irving,* 77 Misc.2d 497, 499, 354 N.Y.S.2d 47, 50 (Sup.Ct.N.Y. Co.1973). Consequently, the above commentator later synthesized from post-*Parke-Bernet Galleries* cases the rule that

> when the action is between a third party who dealt with a representative of the non-domiciliary in this state, the activi-

---

2. *Glassman* was an action by the broker against the owners. New York law appears to hold that an agent cannot predicate the court's long-arm jurisdiction over his principal solely on his own activities as agent within the state. *See Haar v. Amendoris Corp.,* 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973), *reversing* 40 A.D.2d 769, 337 N.Y.S.2d 285 (1st Dep't 1972) "on the dissenting opinion at the Appellate Division"; *Parke-Bernet Galleries, supra,* 26 N.Y.2d at 19 n.2, 308 N.Y.S.2d at 342 n.2, 256 N.E.2d at 509 n.2. The quoted statement of the court in *Glassman* seems to pause at the very threshold of the inquiry and rule that an independent contractor simply is not "an agent" within the meaning of the jurisdictional statute.

ties of that representative will be imputed to the non-domiciliary when he requested the performance of those acts in New York and those acts benefit him, and this is true without regard to whether the representative is an agent or an independent contractor.

McLaughlin, Practice Commentaries, *supra*, C302:3, at 41 (Supp.1981–82).

We need not attempt to determine for purposes of the present case which test the New York Court of Appeals would adopt, were it squarely confronted with the question, for even under the more relaxed standard, which apparently was applied below, Mayes failed to make a prima facie showing of jurisdiction.[3] Mayes sought to substantiate her contention that Bobbe was the agent of the defendants by presenting Bobbe's written affirmation together with copies of correspondence between Leipziger and Bobbe. The facts that, as found by the district court, Bobbe was Mayes's own attorney, that he was acting in her interests rather than for the benefit of the defendants, and that it was Bobbe who directed the actions of the defendants rather than vice versa, fairly leap from the pages of Mayes's documents. For example, in responding to Leipziger's first letter, which had sought to preserve defendants' right not to handle an appeal for Mayes, Bobbe wrote:

> This would be a matter of great disappointment to *us*, but, of course, *we* would not want you to continue to act against your better judgment. In the event of the denial of the motion, would you be willing to give *us* the *reciprocal* right to engage other counsel or to act *ourselves?* If so, then *we* gladly accept the terms that you set forth.

(Bobbe letter to Leipziger dated October 25, 1979; emphasis added.) As to the procurement of a transcript, Bobbe wrote, "*I do hereby authorize you* to order it, and if an additional amount must be paid over and above the deposit of $50.00 I will reimburse you therefore." (Bobbe letter to Leipziger dated December 12, 1979; emphasis added.) A few weeks later Bobbe wrote:

> In accordance with my promise of last evening, I enclose herewith my check to your order ... for filing the notice of appeal ... and for the docketing of the appeal.... *I would also ask you* to order the transcript ... and to let me know the amount required by the reporter in advance.

> Before serving the notice of appeal, *I would approve of your* sounding out our opponents as to the possibility of a realistic settlement. *I am authorized [sic] by the client* to say that the least amount at which she is [*sic*] willing to settle is $45,-000. ...

(Bobbe letter to Leipziger dated January 8, 1980; emphasis added.) As to the prosecution of the appeal, Bobbe wrote, "Please confirm the fact that the notice of appeal has been filed.... The client and I are most anxious that we proceed with the appeal as promptly as possible...." (Bobbe letter to Leipziger dated April 8, 1980.) And after learning that a notice of appeal had not been timely filed, Bobbe wrote, after detailing arguments that could be advanced to obtain leave for a late filing, "Now, I must mention my personal grievance.... I must say that we will have to take a most serious view of all this if we should now be deprived of our right to appeal." (Bobbe letter to Leipziger dated May 19, 1980.)

Thus, although Bobbe's affirmation suggests that the defendants used him as their agent to procure Mayes's consent to their acting as her attorneys and their agent to fashion the arguments to be proffered in

---

**3.** When the question of jurisdiction is determined by the district court on the basis of affidavits and documentary material the plaintiff need only make a prima facie showing of jurisdiction in order to defeat, temporarily, a motion to dismiss. *Marine Midland Bank, N. A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981) ("Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion."); *Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 57, 58 (2d Cir. 1981).

the California action, the documents dispel any notion that Bobbe ever was acting on the defendants' behalf or that he was subject to their control. Bobbe plainly was not defendants' "agent" within any conceivable interpretation of CPLR § 302(a)(1).

### B. The Contention of Activity "in Person"

On appeal Mayes also contends that the court had jurisdiction over the defendants because, by virtue of Leipziger's telephone calls and written communications from California to Bobbe in New York, the defendants transacted business "in person" within New York. This argument appears to have been disclaimed in the district court, as Bobbe's affidavit in opposition to the motion to dismiss stated as follows:

> The moving papers assert that the long-arm statute of New York does not apply here because the defendants have not engaged in any "systematic and continuous activity" in New York, . . . but plaintiff has never suggested that they had been so engaged. . . . The complaint made it abundantly clear (par. 15) that the basis of jurisdiction was the "transaction of business" within the state through me as their *agent.*

(Bobbe affirmation dated May 8, 1981, ¶ 5; emphasis his.) Whether or not Mayes thereby abandoned any argument that the defendants had transacted business in New York "in person," we find the "in person" argument nonmeritorious.

Modern jurisprudence regarding a state's power to exercise in personam jurisdiction over persons not found within the state dates back to *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There, casting aside the traditional requirement of a defendant's physical presence within the territory, *see Pennoyer v. Neff*, 95 U.S. 714, 733, 24 L.Ed. 565 (1878), the Supreme Court stated that notions of "due process require[d] only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In enacting CPLR § 302, the New York legislature sought to reach certain nondomiciliaries of New York, but did not seek to exercise all of the jurisdictional power constitutionally available to it under *International Shoe. See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 459–60, 261 N.Y.S.2d 8, 20–21, 209 N.E.2d 68, 76–77, *cert. denied, Estwing Mfg. Co. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); 1 J. Weinstein, H. Korn, & A. Miller, *New York Civil Practice* ¶ 302.01, at 3–56 to 3–58 (1979).

As interpreted by the New York Court of Appeals, the jurisdictional net cast by § 302(a)(1) over a nondomiciliary who "in person . . . transacts any business within the state" reaches only a defendant that "'purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *see Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra*, 15 N.Y.2d at 458, 261 N.Y.S.2d at 19, 209 N.E.2d at 76. Thus where a defendant has entered the state, even for one day, to negotiate and execute the contract on which suit is eventually brought, § 302(a)(1) gives jurisdiction. *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). But where the original contract between the parties was made in New York without the defendant's presence in New York, and where two representatives of the defendant visited New York for part of a day in an effort to aid plaintiff in easing frictions with the latter's customers, the defendant's contacts with New York were deemed not sufficiently purposeful to be within the intended reach of § 302(a)(1). *McKee Electric Co. v. Rauland-Borg Corp., supra.*

The fact that the defendant was never present in New York in connection with the contract sued on is not dispositive. Thus, New York law holds that so long as the defendant's contacts with New York have been purposeful and designed to permit it to conduct activities within New York, § 302(a)(1) will apply even if the defendant was never physically present in New York. *See Ehrlich-Bober & Co. v. University of Houston*, 49 N.Y.2d 574, 427 N.Y.S.2d 604, 404 N.E.2d 726 (1980); *Parke-Bernet Galleries, Inc. v. Franklyn, supra; L. F. Rothschild, Unterberg, Towbin v. Thompson*, 78 A.D.2d 795, 433 N.Y.S.2d 6 (1st Dep't 1980); *China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 454 F.Supp. 198 (S.D.N.Y.1978). *See Glassman v. Hyder, supra* (correspondence by long-distance telephone and letter with New York real estate broker and his clients, at broker's initiative, not "transaction of business" in New York) *M. Katz & Son Billiard Prods. v. G. Correale & Sons*, 20 N.Y.2d 903, 285 N.Y.S.2d 871, 232 N.Y.S.2d 864 (1967) (the simple placing of an order by a telephone call to New York insufficient to constitute the transaction of business within New York).

In *Parke-Bernet Galleries*, the facts of which have been discussed in part A above, the New York Court of Appeals viewed defendant Franklyn's actions as sufficient for the invocation of § 302(a)(1). There, Franklyn had initiated the opening of a long-distance line between himself in California and Parke-Bernet in New York. He thereby was able to monitor the auction in New York through the ears of the person assigned to assist him, and he effectively "projected himself into the auction room in order to compete with the other prospective purchasers who were there." 26 N.Y.2d at 18, 308 N.Y.S.2d at 340, 256 N.E.2d at 508. The court made it clear that Franklyn was subject to jurisdiction in New York not simply because he had telephoned New York, but rather because he thereby purposely positioned himself to participate in the activity going on in New York.

In *Ehrlich-Bober & Co. v. University of Houston, supra*, the nondomiciliary defendant had, within about a six-month period, initiated 22 separate transactions in New York involving the sale or repurchase of securities with an aggregate value of approximately $44 million. A representative of the defendant had visited the New York office of the plaintiff broker several times and on one such occasion had placed a repurchase order in person. The two transactions that were the subject of suit in New York had been initiated by long-distance telephone from Texas and confirmed by a letter sent from Texas. Without extended discussion, and merely noting its agreement with the Appellate Division, the New York Court of Appeals found that the actions of the defendant university were sufficiently substantial to support long-arm jurisdiction in New York. 49 N.Y.2d at 579, 427 N.Y.S.2d at 607, 404 N.E.2d 726. As stated by the Appellate Division: "There clearly was jurisdiction here. The University dealt with this New York broker on a continuing basis, sent its agreements here and its securities here." 69 A.D.2d 75, 78, 418 N.Y.S.2d 81, 83 (opinion of Kupferman, J., dissenting on other grounds). Thus, in *Ehrlich-Bober*, as in *Parke-Bernet Galleries*, the defendant had projected itself by means of letters and calls into market activity that was ongoing in New York, and hence had purposely availed itself of the privilege of conducting such activities within the state.[4]

The present case presents none of the characteristics of the kind of purposeful activity in New York that is required by the

---

**4.** *China Union Lines v. American Marine Underwriters, supra*, is somewhat similar. There the defendant, a Canadian insurer who never entered New York, allegedly agreed with a New York insurance broker to insure a Chinese corporation. In addition to the telephone calls, letters and telexes between the defendant in Canada and the broker in New York, the parties agreed, "significant[ly]," 454 F.Supp. at 202, that the insured would send its premiums to New York for forwarding to the defendant and that the defendant would send all payments on losses to New York for forwarding to the insured. On these bases the district court inferred that the courts of New York would find that the defendant's activities directed toward New York were sufficiently purposeful to be within the ambit of § 302(a)(1).

courts of New York for the invocation of § 302(a)(1). The defendants never entered New York. They did not initiate the contact with the individuals who were in New York; they were "solicited" by Mayes's prior California attorney to take over the representation of Mayes. The retainer agreement does not even appear to have been "made" in New York; Bobbe's affirmation indicates that the final agreement was reached when the defendants accepted his proposal that if they wished to reserve their right not to prosecute Mayes's appeal, he and Mayes could similarly opt to have attorneys other than defendants prosecute it. Defendants were not to perform their services in New York; they were merely to represent Mayes in California. There was no activity in New York in which defendants sought to participate.

So far as we are aware, no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York. We do not believe that in these circumstances the New York courts would exercise jurisdiction solely on the basis that the defendants, from California, reported to their New York client and sought the wherewithal (*i.e.*, funds, authority, and information) by means of letters and calls to New York to perform their non-New York services.[5]

The judgment dismissing the complaint for lack of personal jurisdiction over the defendants is affirmed.

---

**5.** Since we conclude that § 302(a)(1) does not confer jurisdiction over the defendants we need not consider whether if such jurisdiction were conferred it would offend notions of due process.