**MILLER INVESTMENT TRUST, et al., Plaintiffs,**

v.

**XIANGCHI CHEN, et al., Defendants.**

**No. 12 Civ. 04997(LGS).**

United States District Court, S.D. New York.

June 21, 2013.

Order Denying Certification Oct. 25, 2013.

Phillip C. Kim, Kevin Koon–Pon Chan, The Rosen Law Firm P.A., New York, NY, for Plaintiffs.

Ceren Marie Unal, Fulbright & Jaworski L.L.P., Dallas, TX, Mark Thomas Oakes, Stephen Mark Dollar, Fulbright & Jaworski LLP, Austin, TX, for Defendants.

Jonathan Richard Horne, Laurence Matthew Rosen, The Rosen Law Firm, P.A., New York, NY, for Plaintiffs/Defendants.

## ORDER

LORNA G. SCHOFIELD, District Judge:

Plaintiffs, investors in ShengdaTech, Inc., bring this action against directors and officers of ShengdaTech, Inc., ("Shengda-Tech") alleging securities fraud, negligent misrepresentation and common law fraud. Plaintiffs also assert a single state law claim for negligent misrepresentation against Defendant and Movant Hansen, Barnett & Maxwell, P.C. ("Hansen"), an accounting firm that issued an unqualified audit opinion on ShengdaTech's 2007 financial statements and later provided comfort letters concerning the 2007 financial statements in connection with Shengda-Tech's 2010 private bond offering.

This matter is now before the Court on Hansen's Motion to Dismiss the Third Amended Complaint (Dkt. No. 27, "Motion"). Hansen argues that the Court should dismiss the sole claim against it for lack of personal jurisdiction and failure to state a claim. Because the Court finds that Plaintiffs have not alleged sufficient facts to establish personal jurisdiction over Hansen, the Motion to Dismiss is granted.

## I. BACKGROUND

### A. Factual Background

The relevant facts as set forth in the Third Amended Complaint (Dkt. No. 23, "Complaint") and the declarations and exhibits provided by the parties in relation to the Motion, are as follows:

#### 1. The Parties

This action arises from Plaintiffs' purchase of $8.75 million in convertible bonds

offered by ShengdaTech in December 2010 and early 2011. Non-party ShengdaTech is a Nevada corporation that operated entirely through subsidiaries located in China and purported to manufacture a specialty additive used to make certain manufactured products more durable. ShengdaTech entered the United States market as a publicly traded company on March 31, 2006, through a "reverse merger." In August 2011, ShengdaTech filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the District of Nevada.

Defendants are the movant, Hansen, and five officers and directors of ShengdaTech. Hansen is an accounting firm incorporated in Utah with its sole office in Utah. Hansen provides, among other things, auditing services to publicly-traded companies. Hansen acted as ShengdaTech's independent auditor for the year 2007.

The three Plaintiffs all purchased ShengdaTech convertible bonds in late 2010 and early 2011. The Plaintiffs are Jura Limited ("Jura"), the Randi and Clifford Lane Foundation (the "Lane Foundation") and Miller Investment Trust, on behalf of its mutualfund, the Miller Convertible Fund. (The trust and/or the fund are hereafter referred to as "MCF"). Jura is domiciled in Bermuda. The Lane Foundation is a New York-based tax-exempt charitable organization. MCF is a mutualfund managed by Wellesley Investment Advisors, Inc. ("Wellesley Advisors"), a registered investment advisor located in Massachusetts.

## 2. Defendant Hansen Audits Shengda-Tech's 2007 Financial Statements

Acting as independent auditor, Hansen audited ShengdaTech's 2007 financial statements and issued an unqualified audit report ("2007 audit report"). Hansen's 2007 audit report was included in Shengda-Tech's Form 10–K, which was filed with the SEC on March 17, 2008. For its audit and review work, Hansen billed ShengdaTech $340,375. KPMG replaced Hansen as ShengdaTech's independent auditor for 2008 and later years.

## 3. ShengdaTech Sells Convertible Bonds in a Private Placement

On June 15, 2010, ShengdaTech filed a registration statement with the SEC regarding a planned public offering of stock and retained non-party Morgan Stanley as underwriter for the planned offering. Morgan Stanley was to coordinate and oversee the offering from its headquarters in New York.

As underwriter, Morgan Stanley was required to conduct due diligence from ShengdaTech, which included speaking with ShengdaTech's auditors, Hansen and KPMG. Plaintiffs allege that as part of its due diligence, Morgan Stanley would have conducted and coordinated calls with Hansen and would also have conducted due diligence from Hansen.

ShengdaTech and Morgan Stanley entered an underwriting agreement, filed with the SEC on November 8, 2010, that provided that Morgan Stanley was not obligated to conduct the public offering unless it obtained a comfort letter from Hansen. At Morgan Stanley's request, Hansen sent three letters to ShengdaTech in October and November 2010. The letters stated that Hansen consented to the use of its 2007 audit report in Shengda-Tech's registration statements. Plaintiffs allege that by sending the letters to ShengdaTech, Hansen provided Shengda-Tech and Morgan Stanley with explicit consent to use Hansen's 2007 audit report in the planned public offering. It is undisputed that the letters were sent to

ShengdaTech in China and were not sent directly to Morgan Stanley in New York.

In late 2010, ShengdaTech and Morgan Stanley decided to proceed with an offering of convertible bonds in a private placement rather than the planned public stock offering. ShengdaTech and Morgan Stanley entered into a second underwriting agreement which, like the first, provided that Morgan Stanley had no obligation to conduct the private placement unless it obtained a comfort letter from Hansen. The agreement also provided that Hansen would provide a second letter on the closing date. Hansen reviewed its 2007 audit and assured Morgan Stanley that it could rely on the 2007 audit report. In December 2010, Hansen sent two letters to Morgan Stanley, one that reiterated Hansen's 2007 audit opinion and a second letter updating the assurance at or near the closing date.

ShengdaTech's private placement of $130 million in convertible bonds took place in December 2010. Pursuant to the underwriting agreement, Hansen was paid for its provision of the letters to ShengdaTech and Morgan Stanley.

The private placement took place pursuant to a Private Placement Memorandum ("PPM"), which was provided to investors. Plaintiffs allege that Hansen's comfort letters gave Morgan Stanley consent to use Hansen's 2007 audit report in the private placement. Based on Hansen's consent, Morgan Stanley included Hansen's 2007 audit report in the PPM, which it sent to potential investors.

### 4. Plaintiffs Purchase Convertible Bonds in the Private Placement

Plaintiffs Jura, the Lane Foundation and MCF purchased $8.75 million in convertible bonds in the private placement. The purchase was made on behalf of all three Plaintiffs by non-party Wellesley Advisors

in Massachusetts, acting as fund manager of MCF and investment advisor to Jura and the Lane Foundation with authority to purchase and sell securities on their behalf without prior authorization. In making these investment decisions on behalf of Plaintiffs, Wellesley Advisors relied on the information in the PPM and ShengdaTech's SEC filings.

### 5. ShengdaTech's Inability to Pay the Bondholders

On March 2, 2011, KPMG informed ShengdaTech's Audit Committee that in conducting its 2010 audit, KPMG had discovered "potentially serious discrepancies and unexplained issues" relating to ShengdaTech's financial records. (Compl. ¶¶ 128–29).

On March 14, 2011, NASDAQ suspended trading in ShengdaTech's equity securities. On June 9, 2011, ShengdaTech announced that it was in default on debt securities dated May 28, 2008. On August 19, 2011, ShengdaTech filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Nevada. In bankruptcy documents ShengdaTech stated that, "As of the Petition Date, [it] owed over US$163 million [of bonds] which it has no ability to pay." (Compl. ¶ 37). Other documents stated that there were "material irregularities and/or inaccuracies in the financial records" of ShengdaTech. (Compl. ¶¶ 52, 150–52). In a separate bankruptcy filing, ShengdaTech stated that noteholders can expect to recover ">1%" of the money they had paid to ShengdaTech. (Compl. ¶ 56).

### 6. Plaintiffs' Claim against Hansen

Plaintiffs allege negligent misrepresentation against Hansen under Massachusetts law. Plaintiffs allege that ShengdaTech's 2007 financial statements vastly overstated reported sales, failed to disclose related party transactions and were fabri-

cated in whole or part. Plaintiffs allege that Hansen breached its duty to Plaintiffs by negligently performing its 2007 audit, failing to detect these deficiencies and issuing an unqualified audit report. Plaintiffs allege that Hansen's 2007 audit report contained negligent misstatements as a result.

Plaintiffs allege that Hansen owed them a duty because Hansen permitted its 2007 audit report to be distributed to investors in the private placement and intended that investors rely on the report in deciding to invest in ShengdaTech. Plaintiffs allege that they acted in direct reliance, in Massachusetts, on the representations in Hansen's audit report. Finally, Plaintiffs allege that, as a result of their reliance on Hansen's representations, Plaintiffs paid artificially inflated prices for ShengdaTech's convertible bonds and suffered a near-total loss on their investments.

The Complaint pleads that "personal jurisdiction over Hansen arises from its conduct in connection with the acts complained of herein." (Compl. ¶ 86).

## II. DISCUSSION

### A. Legal Standard

■ Hansen contends that the Court lacks grounds to exercise personal jurisdiction over it. "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has [personal] jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994)). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Metropolitan Life Ins.*, 84 F.3d at 566–67. Where an evidentiary hearing on the motion has not been held, "the plaintiff need make only a prima

facie showing of jurisdiction through its own affidavits and supporting materials." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

■ The Court engages in a two-step inquiry to determine that it has personal jurisdiction over a defendant. First, the Court determines whether there is personal jurisdiction over the defendant under the laws of the forum state. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir.2007). If so, the Court determines whether asserting jurisdiction would be consistent with the requirements of due process under the Fourteenth Amendment. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

### B. Section 302(a)(1) of New York's C.P.L.R.—Transacting Business within New York

■ The Court first considers personal jurisdiction under New York's long-arm statute, section 302(a) of New York Civil Practice Law and Rules. Plaintiffs contend that the Court may assert personal jurisdiction over Hansen pursuant to section 302(a)(1), which provides that a court may exercise personal jurisdiction over a non-domiciliary if the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state," N.Y. C.P.L.R. § 302(a)(1), so long as the cause of action "aris[es] from" that business transaction. *Best Van Lines*, 490 F.3d at 246 (2d Cir.2007) (citing *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164, 850 N.E.2d 1140, 1142 (2006)). Section 302(a)(1) is a " 'single act statute' " by which " 'proof of one transaction in New

York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Deutsche Bank,* 7 N.Y.3d at 71, 818 N.Y.S.2d 164, 850 N.E.2d at 1142 (quoting *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40, 43 (1988)).

 In determining whether a defendant has transacted business in New York, the "'overriding criterion'" is "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York].'" *Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501, 508, 851 N.Y.S.2d 381, 881 N.E.2d 830, 834–35 (2007) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604, 607 (1967)). "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Fischbarg v. Doucet,* 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22, 26 (2007) (quoting *McKee Elec. Co.,* 20 N.Y.2d at 382, 283 N.Y.S.2d 34, 229 N.E.2d at 607). When a defendant has engaged in purposeful activity in New York, "personal jurisdiction is proper because [the defendant] has invoked the benefits and protections of [New York's] laws and thus should reasonably expect to defend its actions here." *Ehrenfeld,* 9 N.Y.3d at 508, 851 N.Y.S.2d 381, 881 N.E.2d at 835 (internal quotation marks and citations omitted).

 A cause of action is considered to "arise out of" a defendant's transaction of business if there is "'an articulable nexus,'" or a "'substantial relationship,' between the claim asserted and the actions that occurred in New York." *Kronisch v.*

*United States,* 150 F.3d 112, 130 (2d Cir. 1998) (quoting *Kreutter,* 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d at 43; *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981)).

 In this case, Plaintiffs have not alleged facts sufficient to establish that Hansen transacted business in New York for the purposes of section 302(a)(1). Hansen's alleged transaction of business in New York is limited to unspecified telephone conversations that Morgan Stanley "would have conducted" with Hansen as part of its due diligence (Compl. ¶ 89) and Hansen's provision of five comfort letters that granted ShengdaTech and Morgan Stanley permission to use Hansen's 2007 audit report in ShengdaTech's planned public offering and private placement in 2010.

Specifically, Hansen sent and addressed the first three letters in October and November 2010 to ShengdaTech, presumably in China or Nevada. The letters were sent at the request of Morgan Stanley, located in New York. The letters explicitly provided Hansen's consent to use its 2007 audit report in ShengdaTech's registration statements for a planned public offering of ShengdaTech stock, which ultimately never took place.

The last two comfort letters, dated December 9 and December 14, 2010, were addressed and sent directly to Morgan Stanley in New York. They stated that Morgan Stanley could rely on and use Hansen's 2007 audit report in Shengda-Tech's December 2010 private placement of convertible bonds. Hansen was paid for its provision of the letters in accordance with the terms of one or both of the underwriting agreements between ShengdaTech and Morgan Stanley. Both underwriting agreements provided that Morgan Stanley

was not required to conduct either the public offering or the private placement unless it obtained a comfort letter from Hansen.

It is undisputed that Hansen, an accounting firm incorporated in Utah with its sole office in Utah, performed all of the activities alleged in this action not in New York but in Utah, China or elsewhere. However, Plaintiffs contend that Hansen "willingly associated itself with" ShengdaTech's 2010 private placement, a New York transaction conducted by Morgan Stanley in New York, when Hansen provided the comfort letters and allowed its 2007 audit report to be included in the PPM that Morgan Stanley provided to investors. Plaintiffs argue that Hansen's provision of the five letters to Morgan Stanley therefore should be considered transacting business sufficient for jurisdiction under section 302(a)(1).

The Court finds that Hansen's provision of the five letters, on its own, was not "purposeful activity" that constituted transacting business within the meaning of section 302(a)(1). As an initial matter, Hansen's provision of the first three letters in connection with the planned public offering cannot be considered transacting business in New York, even if sent at the request of Morgan Stanley. By sending the letters from Utah to ShengdaTech in China or Nevada, Hansen did not commit "volitional acts" by which it "avail[ed] itself of the privilege of conducting activities within [New York]." *Fischbarg,* 9 N.Y.3d at 380, 849 N.Y.S.2d 501, 880 N.E.2d at 26 (internal quotation marks omitted). Moreover, those three letters were sent to further a planned public offering of stock that never occurred. They did not relate to the private placement of bonds, which is the basis for this action.

The two letters sent to Morgan Stanley in relation to the private placement also do not provide sufficient grounds on which to invoke jurisdiction. Case law regarding whether and when the provision of comfort letters into the forum state, alone, may establish personal jurisdiction is limited. However, in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir.1999), the Second Circuit held that an out-of-state law firm had not transacted business in New York for the purposes of section 302(a)(1) where the law firm's only contacts with New York were its provision of an opinion letter in New York in furtherance of a New York transaction and occasional phone calls relating to the letter. In *Bank Brussels,* a group of banks in New York hired the defendant, a Puerto Rico law firm, to provide an opinion about an oil well located in Puerto Rico that served as collateral for the banks' loan. *Id.* at 782. The loan was to be governed by an agreement between the banks and the borrower and conditioned disbursement of the loan on the banks' receipt of the law firm's opinion. *Id.* at 783. The law firm prepared the opinion entirely in Puerto Rico and, at the banks' request, addressed the final opinion to the banks in New York. *Id.* The loan closed in New York, and the loan was disbursed to the borrower. *Id.* When the borrower defaulted on the loan, the plaintiff, one of the banks in New York, brought suit against the law firm, alleging fraud, breach of fiduciary duty and breach of contract. *Id.* at 784. The Second Circuit held that the law firm had not transacted business in New York for purposes of section 302(a)(1).

The court noted that the law firm had not solicited the New York banks to perform the legal services at issue and was rather contacted to perform those services on the basis of a recommendation by a New York bank. *Id.* at 787. Therefore, the action "d[id] not arise out of any al-

leged New York business solicitations, as would be required for § 302(a)(1) jurisdiction premised on solicitations." *Id.* at 787. The court reasoned:

All of [the law firm]'s communications involved either the negotiation of the original agreement for legal services, editorial comments during the process of preparing the final [law firm] opinion or interactions concerning the closing of the security documents in Puerto Rico. In none of these communications did [the law firm] . . . project itself into New York to participate in any activities localized in the state or to represent the banks during any New York transactions.

*Id.* at 788. In support, the court cited *Mayes v. Leipziger*, 674 F.2d 178, 185 (2d Cir.1982), in which the court held that whatever the reach of section 302(a)(1), "no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York."

Similarly, here, Hansen did not project itself into New York. Like the defendant in *Bank Brussels,* Hansen produced an opinion on a foreign entity and provided that opinion to a New York bank to facilitate a New York transaction. Hansen gave Morgan Stanley in New York permission to rely on its audit opinion, knowing that the opinion would be relied on and used in a New York transaction. Hansen is not alleged to have sought out business from Morgan Stanley. Rather, Morgan Stanley or ShengdaTech sought Hansen's permission to include its audit opinion in the PPM. Moreover, Hansen performed all of its work in preparing the 2007 audit report and the comfort letters outside of New York. Based on these alleged facts, the Court finds that Hansen did not engage in purposeful activity in New York and, therefore, personal jurisdiction cannot be established under section 302(a)(1).

## C. Section 302(a)(3) of New York's C.P.L.R.—Tortious Conduct Outside of the State

■ Defendant Hansen contends that section 302(a)(3) of New York's long-arm statute also does not confer personal jurisdiction. Plaintiffs do not respond to that argument in their briefing. Nevertheless, the Court considers whether the exercise of personal jurisdiction pursuant to section 302(a)(3) is appropriate based on the allegations in the Complaint and supporting exhibits.

Section 302(a)(3) of New York's long-arm statute provides that a court may exercise personal jurisdiction over a non-domiciliary who in person or through an agent "(3) commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3). The New York Court of Appeals has identified five elements for personal jurisdiction under section 302(a)(3)(ii): the plaintiff must show that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha,* 16 N.Y.3d 295, 302, 921 N.Y.S.2d 171, 946 N.E.2d 159, 162 (2011) (citing *LaMarca v. Pak–Mor Mfg.*

*Co.,* 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883, 886 (2000)).

Here, Plaintiffs allege that Hansen negligently conducted its 2007 audit of ShengdaTech and thus issued an unqualified audit report that contained misrepresentations. Hansen allegedly reaffirmed its unqualified report to Morgan Stanley and allowed Morgan Stanley to include the 2007 audit report in the December 2010 private placement materials, knowing they would be provided to investors. Plaintiffs allege that they invested in ShengdaTech's bonds in reliance on the representations in Hansen's 2007 audit report and suffered a significant loss as a result.

Here, the first two factors are easily satisfied: Plaintiffs have alleged that Hansen committed the tort of negligent misrepresentation outside of New York, and Plaintiffs' cause of action against Hansen arises from the alleged negligent misrepresentation. However, Plaintiffs have not sufficiently alleged the third element, that the tortious act caused injury to Plaintiffs in New York.

■ To determine whether a tortious act caused an injury in New York, courts apply the situs-of-injury test, which asks where the " 'original event which caused the injury' " occurred. *Bank Brussels,* 171 F.3d at 791 (quoting *Hermann v. Sharon Hosp., Inc.,* 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 581 (2d Dep't 1987)). "This 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." *Bank Brussels,* 171 F.3d at 791 (citing *Hermann,* 135 A.D.2d at 683, 522 N.Y.S.2d at 581; *Fantis Foods, Inc. v. Standard Imp. Co.,* 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980)).

New York courts apply the situs-of-injury test to commercial torts, "where the locus of injury is not as readily identifiable as it is in torts causing physical harm." *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 205, 413 N.Y.S.2d 127, 385 N.E.2d 1055, 1058 (1978). In commercial tort actions where the alleged injury is solely financial loss, New York courts hold that the situs of injury is "where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred." *CRT Investments, Ltd. v. BDO Seidman, LLP,* 85 A.D.3d 470, 471–72, 925 N.Y.S.2d 439, 441 (1st Dep't 2011); *see also Polansky v. Gelrod,* 20 A.D.3d 663, 664–65, 798 N.Y.S.2d 762, 764 (3d Dep't 2005) (holding that the situs of injury was not in New York where the plaintiff's only injury in New York was financial loss, because "the situs of such a nonphysical commercial injury is the place where the critical events associated with the dispute took place and not where the resultant monetary loss occurred" (internal quotation marks omitted)); *Weiss v. Greenburg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, P.A.,* 85 A.D.2d 861, 862, 446 N.Y.S.2d 447, 449 (3d Dep't 1981) (same). The Second Circuit has held that in cases where the plaintiff alleges fraud or breach of fiduciary duty committed in another state, "the critical question is thus where the first effect of the tort was located that ultimately produced the final economic injury." *Bank Brussels,* 171 F.3d at 792.

In the context of commercial torts, the New York Court of Appeals has made clear that "the residence of the injured party in New York is not sufficient to satisfy the clear statutory requirement of an 'injury within the state' " for purposes of section 302(a)(3). *McGowan,* 52 N.Y.2d at 274–75, 437 N.Y.S.2d 643, 419 N.E.2d at 324 (quoting *Fantis Foods,* 49 N.Y.2d at 326, 425 N.Y.S.2d 783, 402 N.E.2d at 126). Thus, the New York domicile of one of the

Plaintiffs, the Lane Foundation, is not sufficient to establish injury in New York and a basis for personal jurisdiction.

To determine the situs of the injury, the Court asks where the "original event which caused the injury" occurred. *Bank Brussels*, 171 F.3d at 791 (internal quotation marks omitted). The New York Court of Appeals has not specifically analyzed the situs of injury in an action where the plaintiff alleges injury due to its reliance on an out-of-state defendant's misrepresentation. The relevant New York Appellate Division and Second Circuit decisions reach seemingly different conclusions. At least one Appellate Division case suggests that the original event that caused the injury was where Hansen's negligence caused the misrepresentations—either in Utah or China in connection with the original audit, or in Utah from where Hansen sent the comfort letters to Morgan Stanley. *See CRT Investments, Ltd.*, 85 A.D.3d at 471–72, 925 N.Y.S.2d at 441 (holding that the situs of injury was not in New York in a case in which hedge fund investors brought an action for fraud and negligence against out-of-state auditors of the hedge fund for failing to disclose material facts, because the plaintiffs' financial injury arose out of the auditor's alleged failure to appropriately perform the audit outside of New York, and not out of the plaintiffs' purchase of the investment in New York); *see also Cooperstein v. Pan–Oceanic Marine, Inc.*, 124 A.D.2d 632, 634, 507 N.Y.S.2d 893, 895 (2d Dep't 1986) (holding that "the plaintiff's allegation that he suffered pecuniary loss based upon [the out-of-state defendant]'s alleged fraud and misrepresentation, without more, is insufficient to sustain his burden of showing that the injury occurred in New York").

However, a number of cases in the Second Circuit and this District hold that the original event leading to the injury in a misrepresentation action is the plaintiff's reliance on the misrepresentations. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 900 (2d Cir.1980) (holding that the original event causing injury was in New York where the plaintiff relied on the California defendant's alleged misrepresentations, made in California, and purchased grape vines that were shipped to the plaintiff in New York); *Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F.Supp.2d 427, 434–36 (S.D.N.Y.1998) ("[T]he law of this Circuit is that plaintiff's reliance in New York on defendant's misrepresentation fixes the situs of the injury in New York."); *Bankers Trust Co. v. Mora*, 523 F.Supp. 285, 287 (S.D.N.Y.1981) (finding that because all of the plaintiff's payments to the defendant in reliance on the alleged misrepresentation were sent from New York, "there was clearly injury in this state").

Here, the Complaint does not allege that any of the Plaintiffs relied on Hansen's representations in New York, but rather that "Plaintiffs acted in direct reliance *in Massachusetts* on the representations made by Hansen in its audit certifications." (Compl. ¶ 297) (emphasis added). The Complaint explains that non-party Wellesley Advisors, residing in Massachusetts, exercised its investment authority to purchase the ShengdaTech bonds on behalf of Jura, the Lane Foundation and MCF and relied on Hansen's alleged misrepresentations. The Complaint clearly alleges that Plaintiffs' reliance on Hansen's misrepresentation was in Massachusetts.

Whether the situs of the injury is where the defendant's actions caused the misrepresentations (Utah or China) or where Plaintiffs relied (Massachusetts), Plaintiffs have not alleged sufficient facts to show that their injury was located in New York for the purposes of section 302(a)(3). The

Court may not exercise personal jurisdiction over Hansen under section 302(a)(3).

Accordingly, Defendant Hansen's argument that the Complaint should be dismissed for failure to state a claim is moot.

### III. *CONCLUSION*

The Court finds that Plaintiffs have failed to meet their burden to show that the Court has personal jurisdiction over Defendant Hansen. Therefore, Hansen's Motion to Dismiss the Third Amended Complaint is GRANTED.

The Clerk of the Court is directed to close the motion at docket entry 27 and dismiss Defendant Hansen.

SO ORDERED.

### *OPINION AND ORDER*

This case is now before the Court upon Defendant Hansen's Motion Requesting Certification Under Rule 54(b) ("Motion"). For the following reasons, Defendant's Motion is denied.

### I. BACKGROUND

On June 26, 2012, Plaintiffs, investors in ShengdaTech, Inc., brought this action against its directors and officers. In their First Amended Complaint, dated August 22, 2012, Plaintiffs added Hansen, Barnett & Maxwell, P.C. ("Hansen") as a Defendant, alleging negligent misrepresentation. On March 14, 2013, Plaintiffs filed the Third Amended Complaint, the currently operative complaint.

On June 21, 2013, the Court granted Defendant Hansen's motion to dismiss for lack of personal jurisdiction. On October 11, 2013, Defendant Hansen filed the instant Motion asking the Court to certify the judgment as final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 54(b).

### II. STANDARD

Rule 54(b) provides that "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay." Fed. R.Civ.P. 54(b). "It is left to the sound judicial discretion of the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal." *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (internal quotation marks and citation omitted). "This discretion is to be exercised in the interest of sound judicial administration ... as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals." *Id.* (internal quotation marks and citation omitted). " '[T]here must be some danger of hardship or injustice through delay which would be alleviated by immediate appeal.' " *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183 (2d Cir.1978) (quoting *Western Geophysical Co. of Am. v. Bolt Associates, Inc.*, 463 F.2d 101, 103 (2d Cir.1972)).

### III. DISCUSSION

A certification of the Court's judgment as final would not dispel the "cloud of legal uncertainty" over Defendant Hansen, and would not promote judicial economy. In light of these considerations, the Court finds that there are just reasons for delay and that entry of final judgment as to Defendant Hansen therefore would be premature.

Defendant Hansen argues that it has "a clear and valid interest in having the cloud of legal uncertainty ... definitively removed at an early point." As Plaintiffs note, however, Defendant Hansen was dis-

missed from this action for lack of personal jurisdiction and not because of any adjudication on the merits of its defense. Plaintiffs may sue Defendant Hansen in another forum any time before the statute of limitations expires. Defendant Hansen will continue to experience legal uncertainty until then whether or not the judgment is final.

Defendant Hansen next argues that "[i]f Plaintiffs are somehow successful on appeal, it behooves this Court to have Hansen re-enter the litigation as soon as possible to participate in discovery, expert disclosures, court conferences, and dispositive motion practice." Defendant Hansen, however, chose to wait until more than three months after its dismissal and two months after the Court had set a schedule for discovery to move for certification of the judgment. An appeal filed now would be unlikely to reach resolution until long after all fact discovery outside of China closes on January 23, 2014, precluding a smooth reentry into litigation by Defendant Hansen following any appellate decision. The only way to minimize redundancy now would be to stay discovery pending the appeal, an outcome that Defendant Hansen does not seek and one that the Court would not in any event order.

An immediate appeal offers no benefits to the remaining parties and claims but does risk inefficiency. An appellate decision would not narrow or clarify the claims or issues that remain in the case. However, requiring Plaintiff to appeal now may delay the progress of the action. The Court has set an ambitious discovery schedule, which it intends to enforce. Plaintiffs hopefully are devoting their full attention to discovery, and an immediate appeal could interfere with those efforts and necessitate extensions to the current schedule. In the absence of any hardship or injustice that could be remedied by an immediate entry of a final judgment, such interference is unjustified.

## IV. CONCLUSION

For the foregoing reasons, Defendant Hansen's Motion Requesting Certification Under Rule 54(b) is denied.

The Clerk of the Court is directed to close the motion at docket entry 53.

SO ORDERED.